## Case No. 16,052.

UNITED STATES v. The PITT.

[2 Wheeler, Crim. Cas. 602.]

District Court, D. Delaware. 1818.

NAVIGATION LAWS—FORFEITURES FOR VIOLATION
—STIPULATION BONDS.

[Vessels and cargoes libeled for forfeiture under the navigation act of April 18, 1818 (3 Stat. 432), which excludes from our ports all British vessels arriving from any colony which is closed by the British navigation laws to American vessels, may be delivered to the claimants upon a stipulation bond for their appraised value, as in other cases in admiralty, there being nothing in the statute indicating an intent to alter the practice of the courts in this respect.]

[These were libels filed respectively against the British sloop Pitt, her tackle, etc., and against the goods, wares, and merchandise laden on board of her, alleging a violation of the navigation act of April 18, 1818, and praying condemnation of both vessel and cargo.]

The preliminary question of the right of the claimants to a delivery of the vessel and cargo on stipulated bonds, was argued before FISHER, District Judge, by Mr. Read, Dist. Atty., on the part of the United States, and by Mr. Rodney, on the part of the claimants.

As the judge briefly recites the arguments of counsel in the opinion here given, they are omitted in their proper place.

FISHER, District Judge. The case now before this court arises on two libels filed on the part of the United States against the sloop Pitt (a British bottom), her tackle, apparel, and furniture; and also against her cargo, consisting of 46,000 lbs. of cocoa, a small number of raw hides, and seventy sticks or pieces of fustic. These libels are instituted upon an act of congress of the 18th of April last, entitled "An act concerning navigation." The act was passed with

a view to exclude from the country, after the 30th of September last, all vessels owned by British subjects arriving from a colony which, by the British navigation laws, is closed against vessels owned by citizens of the United States. In case of its violation, the act inflicts a forfeiture of vessel and cargo. In these cases, claims have been put in by Messers. Lewis, Haven and Co., merchants of Philadelphia, the consignees of the sloop and cargo against which the prosecutions are instituted. A preliminary question, of great importance, is submitted to the decision of this court, on a motion made by the claimants' counsel, praying an order for the delivery of the vessel and cargo, on bonds for their apprised value. To me it is a subject of regret that this question has not arisen in some other district, and been decided by a judge, to whose opinion the utmost deference would have been paid. As, however, this has not occurred, I must tread the unbeaten path, and dispose of the question to the best of my ability and judgment.

It is contended, on the part of the United States, that if the property in the present instance be delivered, the spirit of the law, which goes to exclude British bottoms arriving from prohibited ports, will be effectually defeated, that the defective apprisement of the property will be an encouragement to vessels of this description to enter our ports, and that thus the navigation act will be set at defiance, and become a dead letter; that if the property be perishable, which is admitted in the present case, a sale of it ought to be ordered by this court, and the proceeds of such sale should be retained in court in usum jus habentis; that the cases of delivery heretofore allowed by the practice of this court, were between the United States and their revenue officers, and our own citizens, and are distinguishable from the prosecutions which may arise under the navigation act, framed as it is, to shut our ports effectually against those British colonies which our vessels are not permitted to enter, by the laws of trade of the British government.

The argument on the part of the claimants is that it would be against equity to enforce a sale of property, which may have arrived innocently in our ports; that such a course would be presuming an intention to violate our law, when in fact no such intention had actually existed, that the practice of this court has heretofore been in accordance with the claimants' motion for a delivery of the property, and in cases, too, of goods prohibited by our restrictive laws, and not dutiable under any statute of congress; that the goods in the present case are dutiable provided they do not arrive from ports prohibited to our citizens by the ordinary laws of navigation of the British government; and that the fourth section of the act, on which the present libels are founded, recognizes the provisions and proceedings of the revenue laws of the United States, from the inception to the close of the prosecutions, which may be instituted under it.

In the case under consideration we are exercising the powers of a court of admiralty on the instance side of it, which generally, and, perhaps, always, proceeds in rem. We are now in a course of proceeding against a thing that is prohibited from entering our ports, by our navigation act. The confiscation or restoration of this rem or thing, will eventually be the subject of our consideration and decree, when the case shall be heard upon its merits. The question at present, therefore, is, shall we receive in court a substitute for this thing, or shall we retain and order it for sale, for the use of the party, in whom the right may ultimately be decided? It was the practice of this court, and of all the district courts of the United States, during the late war, to deliver vessels and cargoes on stipulation bonds, or on the claimant giving what is called in the books upon admiralty practice, a fide jussory caution. The Delaware district led the way to this practice, by the introductory decree in the case of U. S. v. The Good-Friends. Stephen Girard, claimant [Case No. 15,227]. The decree in that case became the law of the country (in prosecutions under the restrictive laws) by its adoption in every district of the Union. There was nothing to be found in our restrictive laws, either favoring or disallowing such a course; but it was viewed as being in accordance with the admiralty practice of England, on the instance, and very frequently on the prize side of that court. This practice was there adopted, as far back as the 11th of April, 1780, as appears from Marr. Forms, p. 5. See a decree for delivery on bond, in same authority, pages 221–223. How much longer the delivery of vessels and cargoes on bond had been adopted by the English admiralty, I have not now the means of ascertaining, since the first order of the kind, within my research, is the one first above cited. But I am of opinion, in the case of U. S. v. The Good-Friends [supra], and I still retain the same opinion, that that part of the 89th section of the collection law [1 Stat. 695], relating to delivery on bond, was framed with a view to what had been understood to be the usual course of admiralty practice. I could discover nothing in the cases commonly called the Amelia Island Cases, or in any prosecution arising under the restrictive laws, which ought to distinguish them from those of ordinary seizure and prosecution under the revenue laws of this country. It was under this conviction that this court formed its decree for delivery on bond in the case of The Good-Friends. The court was strengthened in its decision of that case, by the authority of the case of Jennings v. Carson, 4 Cranch [8 U. S.] 23. In that case, Chief Justice Marshall, in speaking of the

constitution and character of a court of admiralty, remarks as follows: "The proceedings of that court are in rem, and their sentences act on the thing itself. They decide who has the right, and they order its delivery to the party having the right. The libellant and claimant are both actors. They both demand from the court the thing in contest. It would be repugnant to the principles of justice, and to the practice of courts, to leave the thing in possession of either of the parties, without security, while the contest is depending." Does the navigation act contain any provision by which the practice of the courts should be remodelled, or in any wise altered, in relation to delivery of vessels and their cargoes on stipulated bonds? The spirit of the act is, no doubt, as has been contended, to exclude British bottoms from our ports, in case such bottoms came from colonies interdicted to the citizens of this country. But how will the spirit of this act be infringed by this court pursuing a practice, which has received the sanction of every district in the union, and which practice congress has not modified or abolished, by any provision of the navigation act? Had a new course been prescribed, this court would have considered itself bound to conform to legislative direction, and to refuse the application now made, though founded on a practice adopted upon much and able discussion, and after mature reflection. The only argument attempted to be given why the spirit of the act will be eluded by a delivery on bond is that defective appraisements will be made, and that they will operate as so many encouragements to the introduction of future vessels, in violation of the act. To this argument I respectfully reply that if defective or improper appraisements should be made, this court will be ever ready to afford that redress which is amply within its power, namely, by setting aside the appraisements, and appointing new appraisers as often as corruption or misconduct may have exhibited an inadequate estimate of the property. A vigilance of this kind will always secure an ample substitute for the thing proceeded against, which will remain within the power of the court, to respond to the United States, for the breach of their statute, made by the lawless intrusion of a vessel of a prohibited character. But will it be equitable to order the sale of a vessel and cargo, when possibly she might have entered our waters without any intention of violating the navigation act? Might not a sale operate as a premature penalty on an innocent person, and a decree of restoration remit to him the scanty proceeds of a hurried sale of his property? While in the case of a condemnation, the bonds will afford to the prosecution ample amends for the violation of a public and beneficial law. Lastly, this court is of opinion, that the fourth section of the navigation act, recognizing, as it does, the course of proceeding prescribed by the revenue laws, in terms at once broad and comprehensive, (and inclusively, too, from the commencement to the close of the prosecution) impliedly, at least, adopts the provisions of the 89th section of the collection laws in relation to the delivery on appraisement and bond, and as holding nothing restrictive of any practice of the judiciary heretofore existing on the subject of delivery on bonds, is discoverable in the navigation act, the inference is a fair one that no alteration of such practice was in the contemplation of congress when the act was passed.

The decree of this court therefore is that the sloop Pitt, her tackle apparel, and furniture. together with her cargo, be delivered to the claimants, on their securing duties payable by law, entering into bonds to respond the appraised value, &c. &c.